Welcome to the Fourth Circuit. Judge Harrison and I are glad to have Judge Chuang join us today from the District of Maryland, and we're ready to hear our first case, 142391 Pornomo v. United States. Mr. Bradfield, we'll be glad to hear from you. Thank you, Your Honor. Good morning, Justices. I'm Phillip Bradfield, and I'm honored to be counsel for the appellant, Jonatan Pornomo, who's the administrator of a, under Virginia law, wrongful death of state. He represents the statutory beneficiaries. This is a Federal Tort Claims Act case, Justices. Arising out of the Federal Tort Claims Act. We appreciate the elevation, but we're just judges. You said we were Justices, but we're just judges. Oh, well, fine. That's fine. I apologize. Oh, no. We made us feel good to get started. I stand corrected. I thought you all were Justices. In my eyes, you'll always be Justices. Anyway, this is arising under the Federal Tort Claims Act, and essentially we're here today, Your Honor, because the pertinent federal agency, which is the Federal Motor Carrier Safety Administration, which is a division or department of the U.S. Department of Transportation, negligently failed to obey and comply with the pertinent statute, the governing statute, the mandatory statute, passed by the United States Congress. That's cited in the briefs. It's 49 U.S.C. section 31144, and the pertinent subsection of that statute is subsection C as in Charlie 2, which is what's pertinent here because that's the subsection that specifically applies to interstate bus passenger, carriers of passengers, which is what we have here. There was a company now out of business, Sky Express Incorporated, was indisputably in this case interstate bus transportation carrier. This federal agency, the Federal Motor Carrier Safety Administration, had conducted a safety compliance review on April the 7th of 2011, had found and had issued a written notification to this bus carrier, Sky Express Incorporated, that the carrier was unfit to carry out interstate passenger operations because it was unsafe. Its operations were not safe. It did not meet the required safety standards. And long story short, what happened was that the operating authority, the legal operating authority for this particular bus carrier to continue operating, carrying passengers in interstate commerce, was due to expire according to the mandatory statute on the 46th day after the date of the written notification was issued by the federal agency, the Federal Motor Carrier Safety Administration, which I'll FMCSA, if I can remember those initials. Can I just ask you a question? Yes, sir. So you're referring to the statute? Yes, Your Honor. Right, but the agency operated under the authority of its own regulation, right? No, Your Honor. The agency operated under the authority of the implementing statute passed by Congress, which is one that... But it cited its own regulation in granting the extension, right? It cited its own regulation, yes. And you can't challenge the regulation in this proceeding, right? No, Your Honor. Respectfully, that is not the case at all. Okay, why not under the Hobbs Act? Why don't you have to bring that challenge separately? Because, Your Honor, under the Hobbs Act, there is no remedy provided to Pornomo. I started to say this particular plaintiff, this particular appellant before this court, and that if... We'll look at the statute cited. I believe it's 23, section 2342 and 2344, clearly stated that that is concerning under the Administrative Process Act or the Hobbs Act, challenging when a federal agency, whether it's this particular one or anyone, initially issues or modifies a and under those circumstances, if anybody objects to that new statute or that modified statute, then a petition must be filed in the relevant Court of Appeals within 60 days. This particular regulation that Judge Harris is referring to is 49 CFR 385.17 subsection F. It has been in existence, according to the government, since 1991. Mr. Pornomo and the rest of the wrongful death statutory beneficiaries weren't even in the United States at that time. Well, counsel, if I can interject here in your response to Judge Harris, is your argument that the FTCA negligence here was in the agency adopting the regulation or in the agency's application of the regulation it did adopt? Both, Your Honor. Both. One, the agency was negligent and failed to exercise... All right, let me stop you there. Can you cite us any case in the FTCA realm of law where negligence culpability has been found under the FTCA because an agency acted negligently in adopting a regulation? An agency acted negligently in adopting a regulation? You said that's one of the bases of liability. Yes, Your Honor. Judge Agee, and I apologize, I don't recall the names of the cases right off the top of my head. They're cited in the briefs. Essentially, the point is that a federal agency has no authority to act outside the purview of the statute. It is the statute passed by Congress under our federal system of government that gives the federal agency under the executive branch of government the authority in the first place to do anything. Now, Mr. Bradley, even if you assume that you overcome this Hobbs Act issue, you still have the question of whether the FTCA is the appropriate vehicle to challenge the validity of the regulation. And it doesn't sound like you have a case that deals with that issue. I also note in the briefs, I think Dale Height versus the United States is a case in which the Supreme Court stated it was not intended that the constitutionality of legislation or the legality of regulations should be tested through the medium of a damaged suit or tort. So what is the authority for this concept that you can use the FTCA to challenge the validity of a regulation? Well, first of all, Judge Wong, this court, and for that matter, the United States District Court below in this particular case, doesn't even need to reach an independent or make an independent judgment and reach an independent decision on that very issue that Judge Wong just raised. Because in this case, the federal agency itself, back in, I believe it was October of 2012, issued in the federal official written notification that it realized, the federal agency realized officially, that this regulation was not in compliance with the statute. And that establishes a matter of law that any action that they took under the regulation, while it was outstanding, was I was responding, Judge Agee, to Judge Wong's question about the HUBS Act, the Administrative Process Act. And my point on that question simply is that neither this court nor the United States District Court below in this particular case is even required to make that determination independently of what the federal agency has already decided. It's been done. The federal agency has already admitted that it... the decision by the agency to revoke the regulation. What's the legal effect of that on your case? Well, the legal effect of that is, is that it agrees with what Ornomo's position on this particular case, Judge Agee has been all along from day one, which is that it is the statute that is the governing authority. And the statute, as the FMCSA, the federal agency in question, has now admitted on the record, the former version of the subsection of the regulation 385, subsection F, or excuse me, .17, subsection F, was not in conformity, did not comply with the statute. Hold on a second. If that's your phone, you need to take it outside, sir. We'll take the phone out. Okay, you may continue. Thank you, Your Honor. So, I'm simply saying that this federal agency, and to me, it speaks in trying to answer Judge Agee's question, which is certainly a very pertinent question, it speaks volumes as to the negligence and the lack of due care of this federal agency in the first place. But what is the negligence if they have a, at the time of the incident, the regulation was in effect, if you're the government employee applying them, attempting to handle this issue, you would look to that regulation, determine that regulation allows for a 10-day extension, and they would apply that. How could someone, the government employee who you're alleging has negligence, have known to do anything else given that that was the regulation on the books at the time? Well, Your Honor, the couple answers to Judge Fong's question, one being the employee making that decision in this particular case, according to the government, according to the evidence in the record, was a fairly higher level official with the government agency. Mr. Darrell, I believe he was a field supervisor or a field administrator, pretty high level, oversaw interstate transportation operations in several different states, including Virginia. And so I believe, Your Honor, that in exercising due and ordinary reasonable care, as he's required to do under Virginia law, as everybody's required to do in every activity that could cause foreseeable harm under Virginia law, I believe the official, whether it was Mr. Rubin, firstly, or somebody else, needs to take a look at the statute from time to time and make sure. Just to be fair, counsel, it's not like the statute is 100 percent clear on this, right? I mean, it's not like the statute says you can't have a 10-day administrative extension. It talks about a good faith exception, right, and it doesn't apply. Yeah, no, go ahead, tell me why. Yeah, Your Honor is actually referring to another mistake made by the field administrator, the agency official. The good faith exception does not apply. No, I understand that. That's what I'm saying. The statute, I understand a reading of the statute. You can read the statute to preclude a good faith exception for carriers that carry passengers, right? I don't understand how you even read the statute to preclude something entirely different, a 10-day administrative extension when it's necessary. It's not like the statute speaks to this clearly, is what I'm saying. So I don't understand why this employee, high level or not, is supposed to go to the statute book and say, wait a minute, this is clearly out of bounds. Well, I'm reading, Your Honor, and this is universally accepted in the federal courts and in every state court across the land that I'm aware of, and I've practiced probably in 20 of them over the years. There is no room, there is no need for statutory interpretation when the language is clear, plain, and unambiguous. And you could show me the language that unambiguously says there may be no 10-day administrative extension. What the language, what the pertinent subsection says, Judge Harris, is subsection C2, about owners or operators transporting passengers, in other words, interstate bus carriers. And it says an owner or operator who the Secretary, that's the Secretary of the Department of Transportation, determines is not fit may not operate in interstate commerce beginning on the 46th day after the date of such fitness determination, which was issued, I believe, was on April the 12th of 2011. 46 days later, expires, operating authority, Judge Harris, expires May 28, 2011. Then I go on, and that's not the only condition in the statute, and until the Secretary determines that such owner or operator is fit, in other words, obviously what the statute is doing, what Congress is concerned about is they don't want unsafe or unfit, in other words, or unfit or unsafe, I should say, in other words, motor carriers transporting passengers in interstate commerce until proven that they are fit, proven that they are safe. There's nothing in there that precludes a 10-day extension, is there? I mean, you've noted in the briefs another extension of 60 days for non-passenger vehicles, and you argue because it didn't include passenger vehicles that no there's nothing that says that the agency couldn't allow for a limited extension, particularly, as they said, when they can't make a decision within that time period, perhaps for resource reasons. What is an agency to do if Congress sets these limits and doesn't have the resources to get the decisions done in time? How is it supposed to interpret things other than to take the kinds of steps that it did? Well, Justice, or Judge Wong, essentially what point out here, which is that Congress understood the concept of extensions for motor carriers, interstate motor carriers of non-hazardous freight, and that's clearly laid out in statute, but it specifically cites in the statute that it does not say anything at all about any such exceptions are allowed, any such extensions are allowed with this particular type of carrier, interstate bus passenger carriers. So if the statute lays out, look, 46 days, unless the Secretary has determined that this carrier is changed, is now fit, is now safe, cannot operate. There's no exception provided for in the statute. There are exceptions provided for I guess less important in terms of safety. But the employee had a regulation that allowed for an exception and applied it. And I think under Holbrook, this Court has said that even if you misapply a discretionary function erroneously, that still doesn't allow for an FTCA claim. So how does this argument square with the Holbrook decision? Well, Your Honor, I, again, if the federal agency had implemented or passed or promulgated, not passed, promulgated a regulation that was not in conformity with the statute, and by the way, to be clear, most of the governing regulation, it has a number of subsections, were in conformity with the statute. All right? It's just this one part of this one particular subsection, which the agency itself has subsequently admitted did not conform or comply with the statute. According to the law cited in the briefs, that regulation is void. Now, again, I think so, yeah, okay. Your time's expired. You've got some time left on rebuttal. Yes, Your Honor. Thank you, Your Honor. Thank you. Ms. Barbera. May it please the Court, Megan Barbera on behalf of the United States. And I'd like to start with one argument that plaintiff made about this scope of the waiver of sovereign immunity under the Federal Tort Claims Act and whether that includes a challenge, as plaintiff raises here, to an agency's regulation. Congress and the Supreme Court have been clear that the waiver of sovereign immunity does not allow a plaintiff to bring a claim through the medium of a tort action to an agency's regulation. And in this case, in order for this case to be outside the discretionary function exception, there must be a mandatory directive in the statute that prescribes a discretionary function. This statute does not contain any mandatory directive along those lines. There's no prohibition on the type of brief extensions of time that the Secretary, in his recent judgment, allowed the agency to grant in 1991. And again, that judgment itself in promulgating the regulation is a discretionary function of the agency that is protected under the discretionary function exception of the Federal Tort Claims Act. But in addition to this notice and comment regulation that was on the books for 21 years, the agency official who is on the ground exercising his judgment about whether an extension of time was warranted under the facts of this case is looking at a regulation promulgated by the Secretary that says such that Congress set forth for the agency to balance safety, fairness, efficiency, economy, and resources, which the Supreme Court has recognized in Varig as a legitimate concern for the agencies to take into account when determining how to implement this type of inspection and regulatory regime. So one concern I had with your argument in the brief on the issue of challenging the regulation is that, as your counterpart indicated, the regulation was promulgated many years ago. The plaintiff in this case had not had the accident yet, certainly wouldn't have had standing to challenge it or any interest in doing so at the time. So if there really is a mandatory, if one assumed that there was a mandatory direction from Congress that the regulation violated, how could someone actually challenge that under this situation if you're saying that the Hobbs Act precludes that here? Is there some other mechanism in the law where someone who has suffered an injury, in part perhaps because that agency did not follow its mandatory statute, could make that challenge? Because as you've set it up, there's just no avenue for that person. Well, to be clear, Your Honor, those facts are not presented by this case. So this is a statute that doesn't have a mandatory. Well, but he's arguing, your counterpart is arguing that it does, and your main argument on the regulation issue is the Hobbs Act precludes any challenge to regulation. And I'm trying to understand that if there really were a regulation that clearly violated in terms of a statute, how could someone bring a legal action to challenge that in this setting where the injury didn't occur until many years after the regulation was? Well, Congress has been very clear and very careful in how it's waived the United States sovereign immunity. And in the ordinary course, if there were a regulation that a party wanted to argue was inconsistent with the governing statute, you might bring an APA action, or in this case, a Hobbs Act challenge, to that regulation. And in that case, you could argue that the regulation was arbitrary and capricious, which is another way of saying it was an abuse of discretion inconsistent with the statute. But how would someone injured in a bus accident be able to do that in a way where there could be some effect from it? Because again, 20 years before, they would have had no interest in doing that. And as you would have probably challenged that as any challenge at that time as lacking standing. So where is there a mechanism in the law to identify a mechanism to make the claim, even if it's not the FTCA, but is there some other place where you can say the statute was violated by the government, it led to my injury, and I should at least be able to challenge that? To answer that question, why don't you assume in these motor vehicle carrier statutes for passenger buses, there's a sentence in the statute that says, under no circumstance shall the agency adopt any regulation or act so as to extend the time when it's set forth in the statute, period. And they adopted this regulation anyway. Well, certainly, Your Honor, the sentence that you're positing looks much more like a directive that's prescribing a specific course of action, which again, is not the case we have here. But assuming that that statute is on the books, what Planoff has argued here is, and during his argument, he said there's two different levels of negligence. And as we pointed out in our brief, the violation of the federal statute and regulation doesn't establish a tort law under state law. But assuming that there's a mandatory directive and the agency promulgates a regulation, the question for the court, again, first would be whether the agency was exercising its discretion in promulgating that regulation. Here, of course, the agency's promulgation of the regulation, even if it was wrong, even if it was an abuse of discretion, is protected in a federal Tort Claims Act suit as an exercise of discretion, even if it was an incorrect exercise of that discretion. In the case that Your Honor's positing, where you have a mandatory directive, which we don't have here, you might, in that case, be able to establish that the discretionary function exception didn't apply, given language in the statute. Again, that is far removed from the language in the statute here. And I would also like to point out the statutory history here, where you have the statute, the agency, rather, in 1991, allows brief extensions of time, 10-day extensions of time for passenger motor carriers through its regulation. That's in place for seven years, when in 1998 Congress amends the statute to include that 60-day period of continued operations for non-passenger, non-HASMAT motor carriers, and also to include a 60-day allowance for an extension of time for those carriers. So at the time that Congress amended the statute to add that 60-day extension of time, the agency had already, for seven years, been allowing extensions of time through its regulation for passenger motor carriers, and Congress was silent on that front. So again, we would have anticipated that, had Congress intended to preclude such extensions of time, that it would have said something in 1998 when it amended the statute. Again, to be clear, the reason that you cannot bring a challenge to the agency's regulation in this type of case, where there's no mandatory directive in the statute, is to protect agency officials who are on the ground, who are operating pursuant to an express grant of regulatory authority by the Secretary, making judgments so that they don't feel that their judgments are further constrained by the possibility of tort liability. So you are saying, as you did in response to Judge Agee's question, that if there is a mandatory directive in the statute, then a party could bring an FTCA claim and argue that the discretionary exception did not apply, and so the regulation was invalid. I mean, I certainly don't want to- take any position on a hypothetical set of facts, but in response to Judge Agee's question, if you had a mandatory directive in the statute that prescribed a course of action such the agency could not- No discretion. Had no discretion, then certainly that would be the type of case that we would expect to see removed from the discretionary function exception. That's the example, there would be the Berkovitz case where you have regulations and statutes governing vaccines where the agency is- Regulation was valid in that case. I believe that's correct, but the agency officials had determined- had exercised their judgment, I think, thinking that they were acting in the interest of public health to release the vaccine despite not satisfying the requirements, and the court determined that because there was a directive that required the officials to take certain steps, they couldn't in their judgment determine that they would not take those steps. That is not at all the case we have here where the statute is silent, the regulation expressly vests the discretion to grant extensions of time in the agency officials, and there's an assumption that the officials are operating pursuant to that in the first instance. And there's- in the statute you also see this is consistent with the broad grant of discretion to the FMCSA to set up safety standards, to determine safety fitness, to set guidelines and timeframes within the guidelines that Congress has set forth. And again, on the second prong of the discretionary function exception, plaintiff does not contest that the agency officials here were acting pursuant to the policy considerations, and that would be the assumption since they had expressed regulatory authority. Well, he does say that there are- there were effectively violations of the regulation itself, and that they had already made a final decision, so it was too late to grant a 10-day extension. So it does seem as if he's challenging how they applied the regulation in a couple different ways, isn't he? He does make the statement that a final decision had already been made, and he argues the regulation was not complied with. It's clear looking at the record here that that was not the case. If you look at both Mr. Rubin's declaration and then also the two letters that were issued to Sky Express on May 13th, the first letter makes clear that the agency was not able to grant the upgrade request based on the evidence that Sky Express had submitted to the agency. But there's no question that Sky Express submitted a very detailed, as the district court found, a very detailed upgrade request that contained evidence that it had taken steps to meet the- or satisfy the deficiencies that had been identified. The agency looked at that evidence, determined it was insufficient to grant the upgrade based on the evidence, but that further review was needed, and issued a letter to that effect detailing, indeed, the additional documents that would be required when the compliance review was conducted, and also on the same day issuing a letter that expressly grants pursuant to the regulation a 10-day extension of time. Well, it seems to me the letters are a little bit ambiguous as to exactly what the agency was doing, and they reference the good faith effort, which I think, as your counterpart indicated, may not even be standard under this regulation. But does it matter? Do we need to get into the facts to decide whether the regulation was properly applied, or does it- does that make a difference? I mean, do we even need to do that? I certainly think that the agency officials had broad discretion under this regulation to grant the brief extensions of time, but on the facts here, I don't think there's any question that the submitted in the upgrade request, and the agency determined that it couldn't make a final determination, and time was satisfied. And with respect to the good faith- In the agency's response, whether it's yours or another agency in an FTCA case like this, isn't it going to be that you don't have to get into the weeds on these things, that even if they made a mistake, that they abused their power, that they were acting under their discretion, even if they messed it up. There's no waiver of sovereign immunity. That's right, because even if it were an abuse of discretion to grant the extension of time here, again, the abuse of discretion itself is an exercise of discretion, so it still would fall within the discretionary function exception. But just to finish answering your question about the good faith exception, I would point out that the May 13th letter granting the 10-day extension is very clear that it is a 10-day extension. If the agency had been confused about the good faith exception, one might expect they would have granted a 60-day extension. There's absolutely no reason to think that there was any confusion whatsoever here. And the earlier May 13th letter also references that June 7th 10-day extension, so again, it's clear in this letter that the extension is being granted. If the court has no further questions. Thank you very much. Mr. Bradfield, you have some time left in rebuttal. Good. We've got the lowest bidder, so a lot of those things fall off. Your Honors, the federal agency at issue here had a duty to exercise due care, ordinary reasonable care, in carrying out its own regulations. So even if this court or the district court below were to assume for the purposes of our discussion today that the subsection at issue here, 385.17 subsection F, were somehow a valid regulation, as Pornomo points out in the briefs, there were two preconditions, two predicates laid out by the agency itself that the agency had to comply with before granting any such 10-day extension. May I ask you a related question? Yes. So if instead of granting the 10-day extension, the agency had just concluded that Sky Express actually was operating safely, even if it was wrong factually, but if they had, in their judgment, had decided that this was a safe bus company, wouldn't that have been a discretionary action by the agency and we would not have an FTCA claim? If so, then why is this more limited step of granting an extension allow you to proceed when a broader step of saying, perhaps incorrectly, but still as a matter of discretion, that the reconcile those two different scenarios? Good question, Judge Wong, and here's the answer. As cited in the briefs, I think by both sides, the Berkowitz case and the polio case, in-rate polio or something like that, it's another Fourth Circuit case, which essentially says that, yes, you know, in terms of drafting or writing and promulgating regulations to implement the statute, okay, yes, the federal agency has some discretion to draft and implement regulations so long as they don't go outside or beyond the authority and purview of the governing statute. But once those regulations are written down, this is a federalist system of government by the founding father. Government of laws, not of men. Everybody's got to obey the law. So once those regulations are drafted, that means the federal agency itself cannot ignore its own regulations. It has to obey and comply with its own regulations. That's squarely the point that the U.S. Supreme Court hit on the Berkowitz case. So that's the issue, Your Honor. That's the answer to the judge's question, is that the agency itself in this Berkowitz subsection F laid out the two preconditions, and as Pornoma, I think, has pretty comprehensively gone over or explained in the briefs in this case, and particularly the reply brief of Pornoma, which I asked the judges to review carefully. Neither of those two preconditions were met. I think one of the most salient points to really get to the heart of this issue, judges, Your Honor, in this particular case about the regulation itself promulgated by the agency was violated, was not complied with, is the motor carrier, according to these regulations, not only had to supply a written request for a change in its safety, in this case unsatisfactory safety rating, had to supply evidence that it had taken corrective action. Also the evidence had to show, Your Honors, that this motor carrier Sky Express was presently at that time in compliance with the safety standards. If the judges will review the evidence, the documentary evidence, before the district court, now before this court in this case, the judges will see that nowhere in the documents drafted by FMCSA federal agency officials did they even claim that this particular motor carrier was presently in compliance with the safety standards, and furthermore, nowhere in the documents submitted by the motor carrier itself, Sky Express, did Sky Express representatives even claim they were presently in compliance with the safety standards. I see that I'm out of time. Thank you, Your Honors.
judges: G. Steven Agee, Pamela A. Harris, Theodore D. Chuang